**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| LARRY D. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: **02:05-CV-437-WKW** |
| | ) | |
| R. JAMES NICHOLSON, | ) | |
| SECRETARY, DEPARTMENT OF | ) | |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Come now the defendant, by and through Leura G. Canary, United States Attorney

for the Middle District of Alabama, and provides this Honorable Court with a

memorandum brief in support of its' Motion to Dismiss, or in the alternative, for

Summary Judgment.

**I. INTRODUCTION**

The plaintiff has instituted suit against the Secretary of the Department of

Veteran's Affairs, R. James Nicholson.  The plaintiff asserts that he was the victim of

unlawful discrimination on the basis of his race in violation of Title 42, United States

Code, Section 2000e-16, when he was discharged during his probationary employment

period.   The plaintiff also claims that he was the victim of unlawful harassment on the

basis of his race during the term of his employment.  The plaintiff cannot state a claim

upon which relief can be granted  and/or summary judgment should be granted as to each

of his claims.  The defendant also asserts that if the plaintiff establishes a prima facie case

of discrimination, his discharge was based upon legitimate, non-discriminatory reasons.

## II.  STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

### A.    STATEMENT OF FACTS

_____The plaintiff entered on duty as an IT Specialist with the defendant on May 18,

2003.[1]  Hired specifically as the VISTA Imaging Systems Implementation Manager, the

plaintiff was hired to produce training materials and provide training on the VISTA

imaging system to end users such as physicians, nurses and other medical and

administrative personnel of Central Alabama Veterans Healthcare System (CAVCHS).[2]

VISTA is a computer operating system much like Windows.  VISTA imaging is a

feature of the system which allows for the production of digitally formatted, computer

stored images such as x-rays and medical records.  As it is computer based, the VISTA

system allows medical professionals in one hospital, for example, to view over the

system, images taken at another location instantaneously.  The system, therefore, allows,

amongst other things, two doctors, in two different hospitals, the ability to view at the

same time, the same x-ray, without the delay and expense occasioned by reproduction of

the film and transmission by some other means such as facsimile or the mails.  Given the

digital format of the image, each doctor simultaneously and instantaneously with its'

---

[1]      Defendant's Exhibit 1 (DEX 1), Notification of Personnel Action.

[2]      Defendant's Exhibit 2 (DEX 2), Declaration of William Greer, p. 4.

production, can view the same x-ray in its original state.[3]

CAVHCS is located within Veterans' Integrated Systems Network area 7 (VISN 7) which is compromised of all VA facilities within the 3 state area of Alabama, Georgia and South Carolina.  At any given time, any of the various IT functions at each facility within VISN 7 are coordinated with one and the other so that the actual use of any IT function/service by the actual end users is uniform.  The installation and implementation of the VISTA Imaging System was one such IT function that was a VISN 7 wide event.  Accordingly, this function was managed at the VISN 7 level and managed by Mr. Harold Carlisle.[4]

On site at CAVHCS, as in the other medical facilities within VISN 7, there were IT positions dedicated almost exclusively to VISTA.  Amongst these are the VISTA Systems Manager and VISTA Imaging Implementation Manager.  In essence, the systems manager is responsible for the installation and maintenance of all hardware and software while the implementation manager, in this case the plaintiff, is responsible for the training and education of end users.  Given the interdependence of these two functions, it was preferred that the persons filling the two positions have a team type working relationship. It was also ideal that the persons filling these positions be familiar and technically proficient in both positions so that they could provide backup to one and the other.  At all

---

[3]    DEX 2, p.3.

[4]    DEX 2, p. 2.

times relevant to this matter, Ms. Saundrah Venne was the VISTA system manager.[5]

In October, 2003, Mr. William Greer, who had been a senior member of the IT staff at CAVHCS since February, 2003, was promoted to the position of Chief Informatics Officer (CIO) of CAVHCS.  With this promotion, Mr. Greer became Mr. Thomas' first line supervisor with the sole authority to recommend his termination or continued employment at the end of his probationary period on May 18, 2004.[6]

After assuming his new duties in October, 2003, Mr. Greer met with the plaintiff to provide him with a mid-term appraisal of his performance.  While Mr. Greer had not been the plaintiff's first line supervisor prior to October, as a senior member of the IT staff at CAVHCS, Mr. Greer had worked with the plaintiff in the VISTA implementation program.[7]  In his comments to the plaintiff's appraisal, Mr. Greer noted that the plaintiff was provided a copy of the VISTA Implementation Managers standards on October 30, 2003, which coincided with the Position Description the plaintiff had received upon his arrival at CAVHCS.[8]  As the attached reveals, Mr. Greer's primary concerns at the time of the plaintiff's mid-term appraisal were of a general nature.  Mr. Greer was concerned that the plaintiff's oral and writing skills were inadequate and not commensurate with the level of performance mandated by the position the plaintiff was filling.  More particularly,

---

[5]     DEX 2, p. 3.

[6]     DEX 2, p. 4.

[7]     DEX 2, pp. 4-5

[8]     DEX 2, Attachment F

it had become necessary for all material prepared by the plaintiff which was to be sent or presented to persons outside of IT to be reviewed by Mr. Greer and/or other members of the IT staff before they could be disseminated.[9]  The plaintiff's e-mails were one such example.[11]  Often they were inundated with grammatical and spelling errors.  Similarly, training materials produced by the plaintiff also contained grammatical and spelling errors.  In an effort to assist the plaintiff overcome these shortcomings, Mr. Greer suggested that he pursue an academic course in basic English and composition.  It was also suggested that the plaintiff join the CAVHCS Toastmasters organization.[12]

On March 18, 2004, Mr. Greer met with the plaintiff again in regards to the issue of his oral and written communication.  As plaintiff had not, to Mr. Greer's knowledge, taken any steps to correct the problem as suggested to him in October, 2003, he was ordered by Mr. Greer to take "Avoiding Grammatical Errors in Business Writing" administered online by the Veterans Administration.  Mr. Thomas was allowed to take this 4.5 hour course during the course of his regularly scheduled work day.   Between March 18, 2004 and May 18, 2004, their was no improvement in plaintiff's ability to effectively communicate orally or in writing.[13]

---

[9]      DEX 2, p. 5.

[11]      Id., Defendant's Exhibits 11 - 19 (DEX 11- 19), e-mails produced by the plaintiff; also see Defendant's Exhibit 31 (DEX 31), pp. 12-122, 124, excerpt of deposition of Mr. Larry Thomas.

[12]      DEX 2, p. 5;  Defendant's Exhibit 4 (DEX 4), pp. 18-20, sworn statement of Ty Beasley.

[13]      DEX 2, pp. 5-6; Defendant's Exhibits 20-30 (DEX 20-30).

The plaintiff's poor oral and written communication skills hampered him in the performance of his duties related to training.  In fact, the plaintiff's initial written training materials were of such poor quality that all had to be reviewed by Mr. Greer and other members of his staff before they could be distributed to end users.  It also became necessary for Mr. Greer and members of the IT staff to preview the plaintiff's oral presentations, for clarity and relevance.  More particularly, the plaintiff did not seem to have the interest, patience or ability to tailor his presentations to the audience to whom he was speaking.  VISTA is a large system with many components, all of which are not used or needed by all the various services within CAVHCS.  For example, instead of presenting to radiologists detailed information tailored to the specific topic of the use of VISTA in the practice of radiology, the plaintiff would use a standardized "one size fits all" presentation which was less detailed and, in reality, an inefficient use of the practitioners' and the plaintiff's time.[14]

Over the course of the plaintiff's employment, Mr. Greer and others became concerned that the plaintiff did not possess an understanding of basic abstract computing principles nor a mastery of basic computer skills.  The plaintiff would frequently inquire about basic computer functions that the multiple certifications he possessed would indicate he had mastered.  In fact, his repeated inquiries, as well as actions taken, led Mr. Carlisle and Mr. Greer to be concerned that the plaintiff's credentials may not be valid.  For this reason, Mr. Carlisle and Mr. Greer decided to request that the plaintiff produce

---

[14]    DEX 2, p. 6;  DEX 4, pp. 21-22, 25-26 sworn statement of Ty Beasley

copies of his credentials. While the plaintiff did have the credentials that he had represented he possessed, subsequent investigation revealed that the credentials were acquired from a training institute for which he subsequently worked. All in all, Mr. Greer was left with the impression that the credentials received were not truly earned as the plaintiff's demonstrated abilities with the exact systems for which he was certified were not consistent with the abilities the certifications implied that he had.[15]

On more than one occasion during his employment the plaintiff displayed a disdain for established procedures and protocols. CAVHCS is a large medical facility providing a wide array of medical and social services to the veterans of Central Alabama and as such has many established procedures for policies to perform its mission both comprehensively and efficiently. Given that changes in one procedure or policy in one portion of CAVHCS may have unintended negative results in another portion of the system, a committee structure is in place. In effect, all changes in policies or procedures are put through various committees which study all the consequences of any proposed change. In this regard, Dr. Judith St. Onge, who at the time was Acting Associate Director for Operations, related to Mr. Greer two separate incidents that she had with the plaintiff. These incidents occurred on April 20, 2004, and May 7, 2004, and were related to Mr. Greer by Dr. St. Onge shortly after they transpired. As Dr. St. Onge's reports of contact for these incidents disclose, the plaintiff had a serious and irreconcilable conflict

---

[15]        DEX 2, p. 7; DEX 2, Attachment E, statement of Dr. Himanshu Singh; Defendant's Exhibit 3 (DEX 3), p. 9, sworn statement of Saundrah Venne.

with the then existing policies and practices of CAVHCS and demonstrated little, if any,

willingness to adhere to them.[16]   Other professionals employed at CAVHCS related

similar experiences to Mr. Greer.[17]

　　　Over the course of his employment with CAVHCS, the plaintiff displayed an

inability to personally conduct himself in a professional manner consistent with the

expectations of all employees of CAVHCS, generally, and the employees Mr. Greer

supervised specifically.  Mr. Greer was advised that the plaintiff would on occasion

inappropriately touch himself; that he was rude and/or condescending in dealing with

other staff and that he engaged in flirtatious behavior.[18]

　　　On, Friday, May 14, 2004, the last day of the plaintiff's probationary period, see 5

C.F.R. § 315.804, Mr. Greer contacted the Human Resources Management Department

(HRM) of CAVHCS and spoke with Ms. Linda King, Chief, HRM.  Based upon the facts

he personally observed or participated in and the information related to him by others for

which he had no reason to disbelieve, he sought to terminate the plaintiff's employment

"because his work performance or conduct during [the plaintiff's probationary] period

fail[ed] to demonstrate his fitness or his qualifications for continued employment." 5

C.F.R. § 315.804.  Following a review of the situation by HRM, the plaintiff was advised

---

[16]　　DEX 2, pp. 7-8; Defendant's Exhibit 5 (DEX 5), declaration of Judith St. Onge.

[17]　　DEX 4, pp. 10-11; DEX 3, p. 7;  DEX 2, p. 8; DEX 2 Attachment A, statement of Mark Kuehndorf; DEX 2, Attachment B, statement of William Piper.

[18]　　DEX 2, p. 9. Attachments B, D, and E.

that his employment with CAVHCS was terminated, effective May 14, 2004.[19]

The plaintiff initially contacted the appropriate EEO office on June 1, 2004 and on June 2, 2004, spoke with EEO Counselor, Mr. Thomas E. Allen. At that time the plaintiff stated that he believed he was terminated during his probationary period on the basis of his race. He did not suggest that he had been the victim of racial harassment.[20] Following an informal investigation that resulted in no resolution, the plaintiff was advised by letter dated June 28, 2004 and acknowledged by the plaintiff on July 6, 2004, that if there were any additional bases upon which he believed that he had been discriminated that he needed to notify Mr. Allen immediately.[21] The plaintiff was also advised of the VA's right to attempt a resolution of each claim of discrimination informally.[22]

On July 6, 2004, the plaintiff filed his formal complaint of employment discrimination.[23] Therein he did not allege racial harassment, but simply that he was terminated during his probationary period on the basis of his race.[24] The plaintiff was

---

[19]     Defendant's Exhibit 21 (DEX 21), May 14, 2004 letter to Larry D. Thomas from Chief, Human Resources Management.

[20]     Defendant's Exhibit 6 (DEX 6), EEO Counselor Thomas E. Allen's report.

[21]     Defendant's Exhibit 7 (DEX 7), Notice of Right to File Discrimination Complaint, dated June 28, 2004, addressed to Larry Thomas.

[22]     Id.

[23]     Defendant's Exhibit 8 (DEX 8), VA Form 4939, Complaint of Employment Discrimination, dated July 6, 2004 and signed by Larry D. Thomas.

[24]     Id.

informed via letter dated August 25, 2004, that any claim of harassment he asserted or implied would not be investigated as it was not timely brought to the attention of the agency in the informal process.[25]   Following an investigation into the plaintiff's allegations, the VA's Office of Employment Discrimination Complaint Adjudication entered a final agency decision on April 25, 2005.[26]

## B.     COURSE OF PROCEEDINGS

The plaintiff timely filed the instant lawsuit on May 10, 2005, asserting that he was discriminated against on the basis of race when his employment was terminated on May 14, 2004, and that he had been the victim of harassment on the basis of his race.[27]   He identified 5 discreet acts as the manner in which he was discriminated in the terms and conditions of his employment.  On July 14, 2006, the plaintiff sought leave to amend his complaint citing 9 additional acts as discriminatory in nature.[28]   The plaintiff's motion was granted without opposition on August 10, 2006.[29]

---

[25]     Defendant's Exhibit 9 (DEX 9), August 25, 2004 letter to Larry D. Thomas from Department of Veterans Affairs, Office of Resolution Management.

[26]     Defendant's Exhibit 10 (DEX 10), Department of Veterans Affairs, Office of Employment Discrimination Complaint Adjudication.

[27]     Complaint (Doc. 1), Case Number 2:05cv437-WKW

[28]     Doc. 31, Case Number 2:05cv437-WKW.

[29]     Doc. 34, Case Number 2:05cv437-WKW.

### III.  ARGUMENTS AND CITATIONS OF AUTHORITY

**A.    THE PLAINTIFF'S CLAIM OF RACIAL HARASSMENT IS DUE TO BE DISMISSED DUE TO HIS FAILURE TO ADMINISTRATIVELY EXHAUST, AND/OR TIMELY EXHAUST SAME.**

Under the doctrine of "exhaustion of administrative remedies," a federal agency

must be permitted to investigate any allegations Plaintiff purports to add to his judicial

complaint.  As the U.S. Supreme Court has noted:

> The doctrine [of exhaustion of  administrative remedies]
> provides "that no one is entitled to judicial relief for a
> supposed or threatened injury until the prescribed
> administrative remedy has been exhausted." . . . . [T]he
> agency should be given the first chance to exercise [its]
> discretion or to apply [its] expertise.  And of course it is
> generally more efficient for the administrative process to go
> forward without interruption than it is to permit the parties to
> seek aid from the courts . . . .  The Courts ordinarily should
> not interfere with an agency until it has completed its action.

McKart v. United States, 395 U.S. 185, 193-94 (1969) (internal citations omitted).

Accordingly, Plaintiff may not raise allegations for the first time in District Court if those

allegations were not administratively exhausted.  Accordingly, it is well settled that a

federal employee must timely exhaust administrative remedies before filing an

employment discrimination suit in District Court under Title VII.  Brown v. General

Services Administration, 425 U.S. 820, 832-33 (1976) (before a federal employee may

file a discrimination claim in federal court, there are "certain preconditions.  Initially, the

complainant must seek relief in the agency that has allegedly discriminated against him").

In an effort to allow Federal agencies an opportunity to resolve complaints

internally, Congress has empowered the EEOC to promulgate regulations for the

acceptance and processing of discrimination and retaliation complaints in federal

employment.  42 U.S.C. § 2000e-16(b); *see* 29 C.F.R. §§ 1614.101-.607 (detailing

administrative process).  Regulations, properly promulgated, have the force and effect of

law.  United States v. Nixon, 418 U.S. 683, 695 (1974).

The EEOC regulations specify deadlines for the initiation of "informal pre-

complaint" contact with an EEO office.  To timely initiate informal pre-complaint

processing, an aggrieved federal employee must consult with an EEO counselor within **45**

**days** of the alleged discriminatory event.  29 C.F.R. § 1614.105(a)(1).

The EEOC rules are not mere technicalities, but integral parts of Congress's

statutory scheme of achieving a "careful blend of administrative and judicial enforcement

powers."  Brown v. General Services Administration, 425 U.S. 820, 833 (1976); *see also*

McKart v. United States, 395 U.S. 185, 195 (1985).  If an employee fails to timely raise

an allegation of discrimination in the administrative process, then he has failed to

properly exhaust his administrative remedies, and the claim should be dismissed.  The

Supreme Court has repeatedly upheld dismissal or summary judgment in cases where a

plaintiff has failed to raise an administrative discrimination claim in a timely manner.

*See, e.g.,* Lorance v. AT&T Tech., Inc., 490 U.S. 900 (1989); Baldwin County Welcome

Ctr v. Brown, 466 U.S. 147 (1984);  Delaware State Coll. v. Ricks, 449 U.S. 250 (1980);

United Airlines, Inc. v. Evans, 431 U.S. 553 (1977).

It is also well settled in the Eleventh Circuit that a federal employee's unexcused

failure to timely initiate an administrative discrimination claim results in summary

judgment or dismissal of the suit for failure to state a claim upon which relief may be granted. *See, e.g.,* Manning v. Carling, 786 F.2d 1108, 1109 (11th Cir. 1986). Herein the plaintiff can offer no excuse for not bringing his claim of racial harassment to the attention of the EEO counselor during the informal process. As discussed in the statement of facts, the plaintiff was advised during the informal process that only those matters brought to the attention of the EEO counselor in the informal process could be pursued in the formal process. The plaintiff took no steps to protect his claim of harassment despite having been warned that it may be waived. His failure to raise the claim administratively, results in the failure of condition precedent to the filing of this lawsuit. The claim of racial harassment is therefore due to be and should be dismissed.

**B.    THE SUMMARY JUDGMENT STANDARD IN TITLE VII CASES.**

A plaintiff in an employment discrimination case is not entitled to a full trial on the merits if summary judgment is appropriate. Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the proceedings. See Chalk v. Secretary of Labor, 565 F.2d 764 (D.C. Cir.), cert. denied, 435 U.S. 945 (1978).

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987). A genuine issue of material fact is one that would change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "The burden on the moving party may be discharged by

'showing' -- that is, pointing out to the [Court] -- that <u>there is an absence of evidence to support the non-moving party's case</u>."  <u>Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987), <u>quoting</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  (Emphasis in original).

Once the moving party has met its burden, the non-movant may not rest on mere allegations but must instead proffer specific facts showing that a genuine issue for trial exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find that he is entitled to relief under Title VII; the nonmoving party may not rely upon the bald assertions contained in his pleadings.  <u>See</u> <u>Blount v. Alabama Cooperative Extension Service</u>, 869 F.Supp. 1543, 1553 (M.D. Ala. 1994) (a "plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate.")

In the employment law context, once the plaintiff has presented a prima facie case of his claim and the employer has articulated legitimate, nondiscriminatory reasons for its actions, a plaintiff is entitled to survive summary judgment only "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action."  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1529 (11th Cir. 1997).

In this case, the record confirms absence of any genuine issue of material fact on each of the plaintiff's Title VII claims and the defendant's entitlement to judgment as a matter of law.

**1)      The Allocations of Proof and Persuasion under Title VII.**

To recover under Title VII, a federal employee must establish by a preponderance of the evidence that the employer's actions were motivated by intentional discrimination and/or retaliation.  St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993); Coutu v. Martin Bd. of County Commissioners , 47 F.3d 1068, 1074 (11th Cir. 1995).  Plaintiff may prove discriminatory or retaliatory intent by direct or circumstantial evidence.

Where, as here, plaintiff seeks to prove his case through circumstantial evidence, a shifting of burden analysis applies.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  Under this analysis, the plaintiff must first establish a prima facie case of impermissible discrimination and/or retaliation.  Burdine, 450 U.S. at 252-53 (1981).  If the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the employer's actions.  Burdine, 450 U.S. at 253 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

The burden on the employer is one of production rather than proof or persuasion. St. Mary's; 113 S.Ct. at 2747; Burdine, 450 U.S. at 254 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons").  Should the defendant meet its burden of production, "the McDonnell Douglas framework -- with its

presumptions and burdens -- is no longer relevant." St. Mary's, 113 S.Ct. at 2749. "The

presumption, having fulfilled its role of forcing the defendant to come forward with some

response, simply drops out of the picture. (citation omitted.) The defendant's 'production'

(whatever its persuasive effect) having been made, the trier of fact proceeds to decide the

ultimate question: whether plaintiff has proven 'that the defendant intentionally

discriminated against [him]'" because of his race, sex or retaliation. Id., at 2749-50. The

"ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." Id. at 2746-47.

## C.    THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS OF RACIAL HARASSMENT AS HE CANNOT ESTABLISH A PRIMA FACIE CASE.

Establishing a prima facie case in a racially hostile work environment case,

requires the plaintiff to "'show: (1) that he belongs to a protected group; (2) that he has

been subject to unwelcome harassment; (3) that the harassment must have been based on

a protected characteristic of the employee, such as [race]; (4) that the harassment was

sufficiently severe or pervasive to alter the terms and conditions of employment and

create a discriminatorily abusive working environment; and (5) that the employer is

responsible for such environment under either a theory of vicarious or of direct liability.'"

Sasser v. Alabama Department of Corrections, 373 F.Supp.2d (M.D. Ala. 2005), *quoting,*

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11 Cir.2002). A hostile work

environment claim under Title VII is established upon proof that "the workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The plaintiff can offer no evidence that he was subjected to insult, ridicule or intimidation on the basis of his race. To the extent the incidents he describes are his bases for a claim of racial harassment, he cannot demonstrate that any of these occurred on the basis of his race as opposed to some other non-discriminatory reason. To the extent that he attempts to make this claim by suggesting that white employees were treated differently in regards to the incidents in his amended complaint he cannot establish same beyond conclusory, unsubstantiated statements. He can present no evidence that the alleged harassing officials in his case had any supervisory role over other implementation managers throughout VISN 7.

In sum, the plaintiff cannot establish that the environment at CAVHCS was inundated with discriminatory ridicule, intimidation or insult. Unable to establish the very premise of a harassment claim, same is due to be dismissed.

**D.    THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS OF DISPARATE TREATMENT BASED ON RACE BECAUSE IT HAD LEGITIMATE NON-DISCRIMINATORY REASONS FOR TERMINATING THE PLAINTIFF'S EMPLOYMENT.[30]**

The gist of the plaintiff's claims of race discrimination is that the defendant intentionally discriminated against him when it discharged him from its employ during his probationary period. The prima facie requirement of this claim, stated generally, is that the plaintiff must show that (1) he was subjected to less favorable terms and conditions of employment (2) than other non-African Americans who were similarly situated. Pearson v. Macon-Bibb County Hospital Authority, 952 F.2d 1274, 1280 (11th Cir. 1992). See also Marshall v. Western Grain Co., Inc., 838 F.2d 1165, 1167-68 (11th Cir. 1988). ("To establish a prima facie case of racial discrimination under Title VII, the plaintiffs must show that they are members of a racial minority and that they were treated differently from similarly situated non-minority members.); Moore v. Devine, 767 F.2d 1541, 1548 (11th Cir. 1985) (Plaintiff employee must present evidence that he was treated differently from a similarly situated employee in order to prove a prima facie case of disparate treatment.)

---

[30]    To the extent the plaintiff may be asserting that each of the acts identified in his complaint were individual, actionable incidents of discrimination, the defendant is entitled to summary judgment as to each every claim. While some may arguably be evidence of discriminatory animus none constitute an adverse employment action for Title VII purposes as they had no bearing on the plaintiff's terms and conditions of employment. See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 - 1239 (11th Cir. 2001) Perryman v. West, 949 F.Supp. 815, 819 (M.D.Ala.1996) ("An employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. . ., there must be a serious and material change in the terms, conditions, or privileges of employment.).

Specifically, to establish a prima facie case of race discrimination case in an employment termination case, the plaintiff must demonstrate:  1) that he belongs to a protected class under Title VII;  2) that he was subjected to an adverse employment action; 3) that he was qualified for the job; and  4) his employer treated similarly situated employees outside his protected class more favorably than he.  Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323, *citing,* EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir.2000).   In lieu of establishing the favorable treatment of one outside his protected class, a plaintiff alleging discriminatory discharge may carry his prima facie case burden by demonstrating that his former position was filled by someone outside his protected class.  Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, at 1525 (11th Cir. 1982).

The defendant does not dispute that the plaintiff belongs to a protected class and that for the purposes of this motion, and this motion alone, that he was qualified for the position for which he was hired.  Similarly, for the purposes of this motion, and this motion alone, the defendant was replaced by a Caucasian male.  Thus, for the purposes of this motion, and this motion alone, the defendant stipulates that the plaintiff can establish a prima facie case of discrimination.

1)      **The plaintiff's discharge was based upon his lack of the necessary skills to effectively and successfully perform the functions of the position.**

Having agreed that for the purposes of this motion and this motion alone, that the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the employee's

discharge.  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)   This is

a burden of production.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248,

255 (1981).  The defendant does not need to persuade the court that it was actually

motivated by the proffered reasons.  Id. at 254.

As the declarations and attachments hereto demonstrate the plaintiff could not, in

the opinion of his supervisor and others, successfully perform the functions of the

position due to a lack of skills in several areas.  Most notably, the plaintiff's employment

was terminated due to his poor communication skills, both oral and written.  Similarly,

the plaintiff's communication skills did not always promote good will, and often times

served to alienate other personnel of CAVHCS.  The plaintiff's actions evidenced a lack

of mastery of basic computer skills and concepts which his certifications indicated that he

had.  Finally, the plaintiff's antagonism towards and/or refusal to adhere to policies and

procedures of CAVHCS hindered his ability to perform the job for which he was hired.

The defendant having met its' burden of production, the plaintiff must present

"significantly probative" evidence to prove defendant's articulated reason is merely

pretext for intentional discrimination.  Elrod, 939 F.2d at 1470 (*citing* Carter v. Miami,

870 F.2d 578, 584 (11th Cir. 1989)).  A plaintiff can prove pretext by showing the court

that a discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence.  Burdine, 450 U.S. at

256;  Taylor, 175 F.3d at 867.  At this state, a plaintiff's obligation "merges with the

ultimate burden of persuading the court that [s]he has been the victim of intentional

discrimination." Burdine, 450 U.S. at 256.

In order to survive summary judgment, the plaintiff must provide sufficient evidence to allow a reasonable factfinder to conclude, at a minimum, that the proffered reasons did not actually motivate the employer's decision. *See* Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997). Plaintiff may do this (1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir.1996). To survive a motion for summary judgment, the plaintiff must demonstrate that a reasonable factfinder would not find credible the employer's reasons for its actions because of their inherent "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." Combs, 106 F.3d 1538.

It should be noted that in cases such as this, federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal anti-employment discrimination statutes do] not interfere, . . . , our inquiry is limited to whether the employer gave an honest explanation of its behavior." Id, *quoting,* Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)). Further, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer." Chapman v. AI Transport, 229 F.3d 1012 at 1030 (11th Cir. 2000). Thus,

"[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

## **CONCLUSION**

Given plaintiff's failure to administratively exhaust his claim of racial harassment, this Court lacks subject matter jurisdiction over said claim and as such, this claim is due to be dismissed.  Additionally, defendant has demonstrated a legitimate, non-discriminatory reason for plaintiff's discharge.  Thus, plaintiff's claim of disparate treatment due to race should be dismissed.

Respectfully submitted this the 11th day of October, 2006.

LEURA G. CANARY
United States Attorney

By: s/R. Randolph Neeley
R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
**E-mail: rand.neeley@usdoj.gov**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2006, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to Plaintiff as follows:

    Mr. Larry D. Thomas, pro se
    3327 Lunceford St.
    Montgomery, AL 36108

                   __ s/R. Randolph Neeley_____
                   Assistant United States Attorney