# EXHIBIT 5

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| LARRY D. THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 02:05-CV-437-MHT |
| | ) |
| R. JAMES NICHOLSON, | ) |
| SECRETARY, DEPARTMENT OF | ) |
| VETERANS AFFAIRS, | ) |
| | ) |
| Defendant. | ) |

### DECLARATION OF JUDITH ST. ONGE

My name is Judith St. Onge and I am over the age of 18 years and a resident of the State of Alabama. I am a Caucasian female. The information contained in this declaration is based upon my personal knowledge and observations unless otherwise noted.

I am presently employed by the Department of Veterans Affairs as the Associate Director for Operations for the Central Alabama Veterans Healthcare System (CAVHCS) and have been so employed since August 2004 (note: I am presently in Military Leave Status as a mobilized member of the U.S. Army Reserves). During the time frame of May 18, 2003 through May 18, 2004, I was employed at CAVHCS as the Associate Director for Patient Care Services and later the Acting Associate Director for Operations.

As a part of my official duties I had contact with Mr. Larry Thomas on at least two (2) occasions. Attached and incorporated by reference herein are reports of contact for



DEFENDANT'S EXHIBIT 5

April 20, 2004, and May 7, 2004. Each report of contact accurately and truthfully represents my interactions with Mr. Thomas on the dates indicated and were prepared by me on or about the day of contact.

Pursuant to Title 28, United States Code, § 1746, I declare under penalty of perjury that the foregoing, as well as the contents of the attached reports of contact dated April 20, 2004, and May 7, 2004, are true and correct.

Executed on this 6th day of October, 2006.

*Judith L. St. Onge*
JUDITH ST. ONGE, RN, PhD

REPORT OF CONTACT

Date of Contact: 20 April 2004

Place: Office of Acting Associate Director for Operations

Person Completing Report: Judith St.Onge PhD, RN
    Acting A.D. for Operations

Description of Contact: During the morning of April 20, I was approached in the hallway by a gentleman who identified himself as Larry Thomas, who stated that he had been trying to see me but had been unsuccessful. I had my calendar with me, so gave him an appointment for 2PM. (Note: As soon as I returned to the office, I checked with Ms Oda, Ms Moss, and Ms Baldwin who denied that he had tried to make an appointment with me.)

Mr Thomas arrived at 2pm. He stated that he was there to inform me that the facility needed many digital cameras, docking stations and tripods so that the nurses and clerks could take pictures of the patients, because this is a requirement for JCAHO (note: it is NOT a JCAHO requirement). He was unclear of how many he felt we would need, but at one point 22 cameras for just one service line (Mental Health) was mentioned. I asked Mr Thomas if he had obtained approval of the AD for Patient Care and the Chief, HAS for their staff to be taking pictures. He said that he didn't need this approval because he had been out on the units telling staff that they need to start making space for these cameras and accessories because he had determined this was necessary. I emphatically told him that I personally did not agree with this approach, but that my agreement, or his, were not the issue. I reminded him that we have a council structure, as well as an organizational chain of command that would make such recommendations. I asked him not to go out and start informing staff that they would be doing this, or estimating equipment purchases in this way. Mr Thomas said that he does not get along with the Chief of HAS and that he didn't see why he needed to work with other leaders because he knew what was needed and that it was his job to say what was needed and our job to do it. Again, after lengthy explanation of our council structure and our chain of command, I encouraged him to work through appropriate channels.

At that point Mr. Thomas changed the subject to discuss his perception that we need a scanning policy. He stated that he is trying to get scanners to people who request them, but that we need a policy. I told Mr Thomas that I had seen a scanning policy and that I recalled it was one that was carefully designed to centralize scanning to assure that we did not miss all the steps of processing certain operations such as consults and bills from outside providers. He again disagreed and felt that any attempt on the part of CAVHCS management to handle situations differently from his view was substandard. Again, it was clear to me that Mr Thomas was not working through appropriate channels at this facility and was not willing to do so. I did agree to set up a meeting if I was wrong and there was no scanning policy. (Note: Subsequent to the meeting, I checked and the

scanning policy that I had recalled is in force. Additionally, Mr. Beasley assured me that scanning issues are being carefully tracked through the Information Mgmt Council).

During this meeting, Mr Thomas was very personable and friendly. We chatted about several other issues, such as our children. But on the issues related to Central Alabama, it was clear that he was not conceptualizing needs or processes of this facility, and was spending a great deal of time working against our existing processes.

*Judith St.Onge*
JUDITH L. ST.ONGE

(4)

REPORT OF CONTACT

Date of Contact: 7 May 2004

Place: Office of Administrative Assistant to ACOS Primary Care

Person Completing Report: Judith St.Onge PhD, RN
Acting Associate Director for Operations

Description of Contact: I was in the office of the secretary to the ACOS for Primary Care in the morning of May 7. I overheard a conversation in the office of Ms Mclean, which adjoins the secretary's office. The door was open, and I saw Mr Thomas, Ms Mclean and Mr Holt. I could hear Mr Thomas saying, "I went out to those nurses and put a stop to that!" Since I am only temporarily the AD for Operations, and will likely return to the position of AD for Pt Care, which includes Nursing Services, this comment caught my attention. I stuck my head in the door and asked if I could assist. Mr. Holt, Chief Nurse of Primary Care, indicated that he had a question that I could answer.

I entered the room and heard the story. It appears that Mr. Thomas had been out on the units telling certain RNs and LPNs that they could no longer enter certain orders into our computer system. The orders they had been entering were approved by Nursing Leadership and established as protocols by the Executive Committee of the Medical Staff. Mr Thomas had decided that this was not acceptable, and had notified Ms Mclean that it was to stop. Mr. Holt and Ms Mclean thought they were going to have to hire a physician or nurse practitioner to complete the work according to Mr Thomas' specifications.

I was shocked and dismayed at this blatant example of a technician dictating clinical practice. I told this to Mr Thomas, and referenced our meeting of 20 April in which I had clearly spelled out to him the mechanisms and chain of command for making policy decisions. He disagreed and began arguing. I called Mr Ty Beasley, who is the head of Clinical Informatics, and asked him to join us. When Mr Beasley arrived, he described the issue and related that there were several ways that it could be resolved. In Mr Beasley's presence I again reinforced that our councils and managerial staff are available to work closely to assure that IT solutions mirror clinical needs. I was very clear that CAVHCS cannot tolerate IT technicians dictating clinical practice and medical protocols.

*Judith*
JUDITH L. ST.ONGE