EXHBIT: _____11_____ 11 pages

Sworn Statements of Kenneth Langford

CERTIFICATE OF COURT REPORTER

I, Rebecca Edwardson, a Notary Public in and for the State of Colorado, before whom the above-entitled cause was taken, do hereby certify that the proceedings were taken by me in shorthand and thereafter reduced to typewriting under my supervision; that said proceedings is a true record; that I am neither counsel for, related to, nor employed by any of the parties to the action in which the proceedings were taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



Rebecca Edwardson
Notary Public in and for
THE STATE OF COLORADO

My commission expires:
July 7, 2007

1

ORIGINAL

```
 1              UNITED STATES OF AMERICA
             DEPARTMENT OF VETERANS AFFAIRS
 2             OFFICE OF RESOLUTION MANAGEMENT
                    BAY PINES, FLORIDA
 3
 4    ---------------------------------
      LARRY D. THOMAS,                  \
 5         Complainant,
 6         vs.
                                    Case No.
 7                                  200I-0619-2004102917
 8    VA CENTRAL ALABAMA VETERANS
      HEALTH CARE SYSTEM,
 9    WEST CAMPUS,
              Respondent.          /
10    ---------------------------------
11
                       TELEPHONIC
12        SWORN STATEMENT OF KENNETH LANGFORD
13              Tuesday - November 2, 2004
                  11:00 a.m. - 11:10 a.m.
14
15
16
17   APPEARANCES:
     DEPARTMENT OF VETERANS AFFAIRS
18   OFFICE OF RESOLUTION MANAGEMENT
     Ten Thousand Bay Pines Boulevard
19   Building 37  Room 112
     Bay Pines, Florida  33708
20   BY:  WINSTON JOHNSON
             EEO SPECIALIST
21
22
                                              1
```

```
 1                P-R-O-C-E-E-D-I-N-G-S

 2                                      11:00 a.m.

 3           The sworn statement of KENNETH

 4  LANGFORD, witness, was taken before me, KATHRYN

 5  L. LILLY, Notary Public, State of North Carolina,

 6  pursuant to said Notice in said cause for the

 7  taking of said sworn statement.

 8                      *   *   *

 9           INVESTIGATOR JOHNSON:  Do you

10  solemnly swear or affirm that the information

11  that you are about to give is true and complete

12  to the best of your knowledge and belief?

13           THE WITNESS:  Yes, sir.

14  Whereupon,

15              KENNETH LANGFORD

16  a witness, called for examination, after having

17  been first duly sworn or affirmed, was examined

18  and testified as follows:

19                    EXAMINATION

20      BY INVESTIGATOR JOHNSON:

21      Q.  For the record, my name is Winston

22  Johnson, EEO investigator, and I'm taking a
```

2

```
 1    telephonic affidavit for the complaint of Larry
 2    D. Thomas against the Central Alabama Health
 3    Care System, West Campus, Case Number
 4    200I-0619-2004102917.
 5              Would you state for the record your
 6    name and spell it, please?
 7         A.   My name is Kenneth Langford,
 8    L-A-N-G-F-O-R-D.
 9         Q.   You have the right to have a
10    representative present.  Do you have a
11    representative?
12         A.   No, sir.
13         Q.   Would you like to proceed without
14    one?
15         A.   Yes, sir.
16         Q.   Where are you employed?
17         A.   I'm employed at CAVHCS, Central
18    Alabama Veterans Health Care System, West and
19    East Campus.
20         Q.   How long have you been employed at
21    this facility?
22         A.   Since June of 2001.
```

3

```
 1          Q.   What is your title and grade?
 2          A.   I am a Manager of the
 3   Cardiopulmonary Department, and I'm a GS-11.
 4          Q.   This investigation will focus on the
 5   claim accepted for investigation.  I will read
 6   the claim into the record before you respond to
 7   it.
 8               Claim, termination during
 9   probationary period, whether on the basis of
10   race (black) the Complainant was discriminated
11   against when on or about May 14, 2004, the Chief
12   Information Officer, William Greer, informed him
13   that at the end of the workday his employment as
14   the Vista Imaging Implementation Manager, GS-12,
15   would be terminated during her probationary
16   period for failure to successfully perform the
17   duties of the position.
18               Since this complaint is based on the
19   Complainant's race, identify your race?
20          A.   I'm Caucasian.
21          Q.   Do you know the Complainant?
22          A.   At the business level, not
```

4

```
 1  personally.
 2       Q.  How do you know the Complainant?
 3       A.  Just at the work level.  I don't
 4  have any relationship with him outside of the
 5  workplace.
 6       Q.  How would you describe your
 7  communications with the Complainant?
 8       A.  I had no problems with him.  I could
 9  call Mr. Thomas and explain what problem I was
10  having and he was Johnny on the spot to try to
11  assist me in any way he could.
12       Q.  Did the Complainant conduct Vista
13  Imaging training for your clinical staff?
14       A.  Yes.
15       Q.  Are you part of the clinical staff?
16       A.  Yes, sir.
17       Q.  Did you participate in this
18  training?
19       A.  Yes, sir.
20       Q.  Did you get any feedback in regard
21  to the training?
22       A.  No negative feedback at all no, sir.
```

5

```
 1        Q.  How would you characterize the
 2   training?
 3        A.  I had no problems with it.  When I
 4   left the classroom I could perform my duties
 5   with no problems.
 6        Q.  Have you had the opportunity to
 7   communicate with the Complainant via e-mail
 8   communication?
 9        A.  Yes, sir.
10        Q.  How would you describe those
11   communications?
12        A.  Professional, to the point, could
13   give me what I needed or give me the
14   instructions of what I needed to do, I had no
15   problem with his communication.
16        Q.  Describe the Complainant's
17   interpersonal communication with the clinical
18   staff that he trained.
19        A.  It was professional.  He could get
20   his point across.  To my knowledge the staff
21   that I am responsible for, nobody had any
22   problems with Mr. Thomas.
```

6

1700 Pennsylvania Avenue, N.W.  
Washington, D.C. 20006  
JABS REPORTING, INC.  
www.jabsreporting.com  
(202) 296-6102  
(888) 805-5227

1   Q. Were there any complaints?

2   A. None that I'm aware of.

3   Q. How would you characterize the
4   Complainant's customer service?

5   A. Customer service, he treated me as a
6   customer and he was excellent. If I had a
7   problem or a question I could pick up the phone
8   and call and he either could answer the question
9   over the phone or he was down in my department
10  reviewing what I was describing and he was
11  working out a plan to rectify the problem.

12  Q. How would you characterize the
13  Complainant's computer expertise?

14  A. I'm not going to be able to answer
15  that because other than him working in my
16  specific area I couldn't really tell you about
17  the rest of his computer experience.

18  Q. Do you have females on your staff?

19  A. Yes, sir.

20  Q. How would you describe the
21  Complainant's interaction with the female staff
22  members?

7

1    A.  He was professional in my presence.
2    I had no problems with him being inappropriate
3    in any way or at any time.
4        Q.  Were there any allegations of
5    inappropriate conduct?
6        A.  No, sir, not to me.
7        Q.  Were you in the position to evaluate
8    the Complainant's overall performance as
9    Implementation Manager?
10       A.  No, sir.
11       Q.  Do you have any reason to believe
12   the Complainant's termination during his
13   probationary period was influenced by his race?
14       A.  No, sir.
15       Q.  Do you have any additional
16   information that you would like to add regarding
17   the claim that you have not already shared with
18   me, something I may have missed that would
19   clarify this issue?
20       A.  No, sir.
21       Q.  I would like to ask you at this
22   time, would you like a copy of your transcript?

8

1   A.  Please.

2   Q.  These are the guidelines that you
3   must follow.  The witness may not make any marks
4   on the transcript itself, but that all
5   corrections should be made on an errata sheet
6   that will be provided with the transcript.  Any
7   changes to the original transcript will not be
8   included into the investigative file.

9       The signed transcript and correction
10  sheet are to be returned by mail to the
11  investigator within seven calendar days of
12  receipt.  If the signed transcript and
13  correction sheet are not returned to the
14  investigator within seven calendar days, it will
15  be deemed that the witness has elected to waive
16  his right to review, correct and sign.

17      Witnesses will be encouraged to keep
18  a copy of the errata sheet and transcript.  The
19  witness may not make substantive changes to
20  their testimony.

21      Mr. Langford, I am going to mail
22  this to you Fed Ex so I'll need you to provide

9

```
1   an address and a telephone number where you

2   would prefer to receive your transcript.

3         A.  Okay.  Just send it to my home

4   address.  Is that proper?

5         Q.  Yes.

6         A.  It's ████████████████████████,

7   ████████, ██████, ████, and the number here

8   at work would be the best one to get me.

9         Q.  They probably need a home number,

10  but you can tell me what time is the best time

11  for delivery.

12        A.  Sure, that would be fine.  It's

13  ███████-███, and the best time for delivery

14  would be after 4:00 o'clock in the afternoon.

15              INVESTIGATOR JOHNSON:  Mr. Langford,

16  this ends your sworn statement.  I want to thank

17  you for your time and cooperation.

18                    *  *  *  *

19              (Thereupon, at approximately 11:10

20  a.m. the above proceeding was adjourned.)

21

22
```

10

```
 1            CERTIFICATE OF NOTARY PUBLIC
 2              STATE OF NORTH CAROLINA
 3       I, Kathryn L. Lilly, a Notary Public in
 4  and for the State of North Carolina, before
 5  whom the foregoing cause was taken, do hereby
 6  certify that the witness whose testimony appears
 7  in the foregoing transcript was taken by me
 8  in shorthand at the time mentioned in the
 9  caption hereof and thereafter transcribed by me;
10  that said transcript is a record of the
11  testimony given by said witness to the best of
12  my ability; that I am neither counsel for,
13  related to, nor employed by any parties to the
14  action; and further, that I am not a relative or
15  employee of any counsel or attorney employed by
16  the parties hereto, nor financially or otherwise
17  interested in the outcome of this action.
18
19            _____
                        NOTARY PUBLIC
20
21  My Commission Expires:
    July 27, 2008
22
```

Jabs Reporting, Inc.
1700 Pennsylvania Avenue, Suite 400

```
 1           DEPARTMENT OF VETERANS AFFAIRS
             OFFICE OF RESOLUTION MANAGEMENT
 2                  BAY PINES, FLORIDA
 3
     ------------------------------
 4   LARRY D. THOMAS,            \
            Complainant,
 5
                vs.
 6                              Case No.
                                200I-0619-2004102917
 7
     CENTRAL ALABAMA VETERANS
 8   HEALTH CARE SYSTEM,
     WEST CAMPUS,
 9        Respondent.          /
     ------------------------------
10
11            ACKNOWLEDGMENT OF DEPONENT
12        I, Kenneth Langford, do hereby
     acknowledge that I have read and examined pages 2
13   through 10, inclusive, of the transcript of my
     deposition taken on Tuesday, November 2, 2004,
14   and that:
15   (Check appropriate box)
16   [ ] the same is a true, correct, and complete
     transcription of the answers given by me to the
17   questions therein recorded.
18   [ ] except for the changes noted in the attached
     Errata sheet, the same is a true, correct, and
19   complete transcription of the answers given by me
     to the questions therein recorded.
20
21

22   _____              _____
     Date                      Signature
```

                                                          12

1700 Pennsylvania Avenue, N.W.      JABS REPORTING, INC.         (202) 296-6102
Washington, D.C. 20006              www.jabsreporting.com        (888) 805-5227