EXHBIT: ___12___  14 pages

Sworn Statements of Kathleen Mclain

Sworn Statements of Kathleen Mclain

CERTIFICATE OF COURT REPORTER

I, Rebecca Edwardson, a Notary Public in and for the State of Colorado, before whom the above-entitled cause was taken, do hereby certify that the proceedings were taken by me in shorthand and thereafter reduced to typewriting under my supervision; that said proceedings is a true record; that I am neither counsel for, related to, nor employed by any of the parties to the action in which the proceedings were taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



Rebecca Edwardson
Notary Public in and for
THE STATE OF COLORADO

My commission expires:
July 7, 2007

1

```
 1              UNITED STATES OF AMERICA
             DEPARTMENT OF VETERANS AFFAIRS
 2           OFFICE OF RESOLUTION MANAGEMENT
                   BAY PINES, FLORIDA
 3
 4   ------------------------------
     LARRY D. THOMAS,                \
 5           Complainant,
 6        vs.              Case No. 200I-0619-
                                    2004102917
 7
     DEPARTMENT OF VETERANS AFFAIRS,
 8   CENTRAL ALABAMA VETERANS
     HEALTHCARE SYSTEM,
 9           Respondent.    /
     ------------------------------
10
11                    TELEPHONIC
           SWORN STATEMENT OF KATHLEEN MCLAIN,
12
13              Wednesday - October 27, 2004
                    5:30 p.m. - 5:43 p.m.
14
15
16
17
     APPEARANCES:
18
     DEPARTMENT OF VETERANS AFFAIRS
19   OFFICE OF RESOLUTION MANAGEMENT
     Ten Thousand Bay Pines Boulevard
20   Building 37    Room 112
     Bay Pines, Florida   33708
21   BY:  WINSTON JOHNSON
          EEO SPECIALIST
22
```

                                                              1

```
 1              P-R-O-C-E-E-D-I-N-G-S
 2              INVESTIGATOR JOHNSON:  Do you
 3   solemnly swear or affirm that the information
 4   you are about to give is true and complete to
 5   the best of your knowledge and belief?
 6              THE WITNESS:  I do.
 7   Whereupon,
 8              KATHLEEN MCLAIN,
 9   a witness, was called for examination and,
10   after having affirmed or sworn, was examined
11   and testified as follows:
12                   EXAMINATION
13         BY INVESTIGATOR JOHNSON:
14       Q.   For the record, my name is Winston
15   Johnson, EEO investigator, taking the
16   telephonic affidavit for the complaint of
17   Larry D. Thomas, against the Central Alabama
18   Veterans Healthcare System, West Campus, Case
19   No. 200I-0619-2004102917.
20              Would you state for the record your
21   name and spell it, please.
22       A.   Kathleen McLain, M-C-L-A-I-N.
```

2

1    Q.    Spell your first name, please.

2    A.    K-A-T-H-L-E-E-N.

3    Q.    You have the right to have a
4 representative present. Do you have a
5 representative?

6    A.    No, I do not.

7    Q.    Would you like to proceed without
8 one?

9    A.    Yes, I would.

10   Q.    Where are you employed?

11   A.    At the Central Alabama Veterans
12 Healthcare System.

13   Q.    And how long have you been employed
14 at this facility?

15   A.    Since November of 1988.

16   Q.    What is your title and grade?

17   A.    I'm the administrative officer for
18 the Ambulatory Care Service line. I'm a
19 GS-12.

20   Q.    This investigation will focus on the
21 claim accepted for investigation. I will
22 read the claim into the record before you

3

```
 1   respond to it.
 2          "Claim:  Termination During
 3   Probationary Period.
 4          "Whether on the basis of race
 5   (black) the Complainant was discriminated
 6   against when on or about May 14, 2004 the
 7   Chief of Information officer, William Greer,
 8   informed him that at the end of the work day
 9   his employment as the Assistant Imaging
10   Implementation Manager, GS-12, would be
11   terminated during his probationary period for
12   failure to successfully perform the duties of
13   the position."
14          Since this complaint is based on the
15   Complainant's race, please identify your
16   race.
17   A.    I'm Caucasian.
18   Q.    Do you know the Complainant?
19   A.    Yes, I do.
20   Q.    How do you know the Complainant?
21   A.    Mr. Thomas worked in Clinical
22   Informatics and supported CPRS or clinic
```

4

1700 Pennsylvania Avenue, N.W.  
Washington, D.C. 20006

JABS REPORTING, INC.  
www.jabsreporting.com

(202) 296-6102  
(888) 805-5227

1  medical record and he did training for the
2  physicians, nurse practitioners and nurses in
3  the service line.
4      Q.    How would you describe your
5  communications with the Complainant?
6      A.    They were always good.
7      Q.    Did the Complainant conduct
8  implementation training for your clinical
9  staff?
10     A.    Yes, he did.  When he came we were
11 getting ready -- I believe it was VISTA
12 Imaging that was brought up by Mr. Thomas.
13 VISTA Imaging is an electronic system that
14 our X-rays and PST's and other diagnostic
15 tests can be looked up and the providers can
16 look at the X-ray, at the echocardiogram.
17 Mr. Thomas provided training for all of the
18 staff at the hospital.  I interacted with him
19 in scheduling the training for the people in
20 Ambulatory Care.
21     Q.    Did you actually participate in the
22 training?

5

```
 1     A.    No.  Mr. Thomas trained me in my
 2   office.
 3     Q.    How would you describe the training
 4   that you received from Mr. Thomas?
 5     A.    It was successful.
 6     Q.    Did you get any feedback from the
 7   staff in regard to Mr. Thomas' training?
 8     A.    Not specifically to the training.
 9   But they were enthusiastic about the VISTA
10   Imaging and they were all able to access it
11   successfully.
12     Q.    So would you rate the training a
13   success?
14     A.    Absolutely a success.
15     Q.    Have you ever had any e-mail
16   communications with the Complainant?
17     A.    Oh, I'm sure I had quite a few,
18   especially when we were setting up training
19   for different individuals.
20     Q.    How would you describe the quality
21   of the communication?
22     A.    They were -- I'm sorry.  I'm not
```

6

1   quite sure how to answer that. We
2   communicated often by e-mail and it was --
3   you know, we had successful communication.
4       Q.   Okay. Describe the Complainant's
5   interpersonal communication with the clinical
6   staff. Were there any complaints?
7       A.   No. No, there were no complaints.
8   He trained -- during his time here he worked
9   with the Clinical Informatic staff. Everyone
10  I brought in they had training by Mr. Thomas,
11  and it was successful training. There was
12  certainly no complaining.
13      Q.   How would you characterize the
14  Complainant's customer service?
15      A.   It was exceptional from my point of
16  view.
17      Q.   Were you --
18      A.   If you want me to expound on that.
19      Q.   Yes, please.
20      A.   My nurses and the physicians, the
21  nurse practitioners in Ambulatory Care have
22  clinics that run from 8 in the morning until

7

```
 1   female.  There were never any complaints.
 2      Q.   Were there any allegations of
 3   inappropriate conduct?
 4      A.   Oh, no, none at all.
 5      Q.   Were you in a position to evaluate
 6   the Complainant's performance as an
 7   implementation manager?
 8      A.   Only insofar as it affected the
 9   Ambulatory Care Service line.  As far as the
10   service line was concerned, Mr. Thomas was
11   very good to work with.  He provided good
12   training.  He provided training that met our
13   schedule.  There were never any complaints.
14   We had a successful training, you know,
15   because Mr. Thomas worked so well with us.
16      Q.   Do you have any reason to believe
17   that the Complainant's termination during his
18   probationary period was influenced by his
19   race?
20      A.   No, I have no reason to believe
21   that.
22      Q.   Do you have any additional
```

9

1700 Pennsylvania Avenue, N.W.  
Washington, D.C. 20006  
JABS REPORTING, INC.  
www.jabsreporting.com  
(202) 296-6102  
(888) 805-5227

```
 1    information that you would like to add
 2    regarding the claims, something that I may
 3    have missed that would add clarity to the
 4    Complainant's performance?
 5       A.   Well, in my opinion in dealing with
 6    the Ambulatory Care Service line Mr. Thomas
 7    went out of his way to accommodate our
 8    training needs.  We had a very -- you know,
 9    it was very successful, the interaction and
10    getting training arranged and the training
11    itself.  I never had anyone come back from
12    training and say I didn't understand this.  I
13    still don't know how to do it.  It was always
14    a successful conclusion.
15            As I mentioned earlier, I have
16    people who work on contract basis only on the
17    weekends, some of them work only at night.
18    Mr. Thomas went out of his way to get people
19    trained on the schedule that we were running.
20    He went down to the clinics and trained.  He
21    went into the LSU and trained the doctors in
22    there, rather than having them have to come
```

10

1  out to a classroom.  He was very good to work
2  with.
3     Q.    Approximately how many people did he
4  train in Ambulatory Care?
5     A.    Oh, my goodness.  If you count the
6  nurses and the doctors together, it would be
7  over a hundred.
8     Q.    Thank you.
9           I would like to ask you at this
10 time:  Would you like a copy of your
11 transcript?
12    A.    Yes, I would.
13    Q.    These are the guidelines that you
14 must follow, Ms. McLain, the witness may not
15 make any mark on the transcript itself.  All
16 corrections shall be made on an errata sheet
17 that is provided with the transcript.  Any
18 changes to the original transcript will not
19 be included into the investigative file.
20          The signed transcript and correction
21 sheet are to be returned by mail to the
22 investigator within seven calendar days of

11

```
1    witness' receipt.  If the signed transcript
2    and correction sheet are not returned to the
3    investigator within seven calendar days, it
4    will be deemed the witness has elected to
5    waive her right to review, correct and sign.
6         Witnesses will be encouraged to keep
7    a copy of the errata sheet and the
8    transcript.  The witness may not make
9    substantive changes to their testimony.
10        Ms. McLain, I'm going to mail this
11   to you Fed Ex.  Would you please provide an
12   address and a telephone number where you
13   would prefer to receive your transcript.
14   A.    Yes.  Please send it to Central
15   Alabama Veterans Healthcare System,
16   Attention: Ambulatory Care.  The routing
17   symbol is 112.  My name.  The address is 215
18   Perry, P-E-R-R-Y, Hill, H-I-L-L, Road,
19   Montgomery, Alabama 36109.  The phone number
20   is (334) 272-4670, extension 4690.
21        INVESTIGATOR JOHNSON:  Ms. McLain,
22   this ends your sworn statement.  I want to
```

12

1    thank you for your time and cooperation.
2             (Whereupon, the interview was
3    concluded at 5:43 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

13

1       CERTIFICATE OF NOTARY PUBLIC

2             STATE OF OHIO

3    I, Prudence P. Lindsey, a Notary Public in

4    and for the State of Ohio, before whom the

5    foregoing cause was taken, do hereby certify

6    that the witness whose testimony appears in the

7    foregoing transcript was taken by me at the

8    time mentioned in the caption hereof and

9    thereafter transcribed by me; that said

10   transcript is a record of the testimony given

11   by said witness to the best of my ability; that

12   I am neither counsel for, related to, nor

13   employed by any of the parties to the action;

14   and further, that I am not a relative or

15   employee of any counsel or attorney employed by

16   the parties hereto, nor financially or

17   otherwise interested in the outcome of this

18   action.

19                                  *Prudence P. Lindsey*

20                                   NOTARY PUBLIC

21   My Commission Expires:
22   April 6, 2008

JABS REPORTING INC.                    888-805-5227

```
 1              UNITED STATES OF AMERICA
             DEPARTMENT OF VETERANS AFFAIRS
 2            OFFICE OF RESOLUTION MANAGEMENT
                   BAY PINES, FLORIDA
 3     ---------------------------
     LARRY D. THOMAS,               \
 4           Complainant,
 5           vs.            Case No. 200I-0619-
                                 2004102917
 6
     DEPARTMENT OF VETERANS AFFAIRS,
 7   CENTRAL ALABAMA VETERANS
     HEALTHCARE SYSTEM,
 8           Respondent.    /
     ---------------------------
 9
            ACKNOWLEDGMENT OF DEPONENT
10
        I, Kathleen McLain, do hereby
11   acknowledge that I have read and examined
     pages 2 through 13, inclusive, of the
12   transcript of my deposition taken on
     Wednesday, October 27, 2004, and that:
13
     (Check appropriate box)
14
        [ ]  the same is a true, correct, and
15   complete transcription of the answers
     given by me to the questions therein
16   recorded.
17      [ ]  except for the changes noted in the
     attached Errata Sheet, the same is a
18   true, correct, and complete
     transcription of the answers given by
19   me to the questions therein recorded.
20
21
     ----------      -------------------------
22   Date                      Signature
```

15