IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Larry D. Thomas
Plaintiff/pro se

Vs

R James Nicholson
Secretary, Department of
Veterans Affairs

RECEIVED
2007 JUN -7 P 12:51

Civil Action No 2:05cv437-T

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## FACTS

*Rebuttal in the damages seek by plaintiff in:* **I. Introduction**

1. Mr. Thomas seeks punitive damages to the maximum extent of the law by jury, to include back pay, rein-statement into federal service with no time lost, any possible promotion that he would have been eligible to apply for provided Mr. Thomas would have stayed employment and all benefits made hold and complete as if Mr. Thomas service had never been broken. Mr. Thomas also seeks damages for his health problems deriving from stress such as High Blood Pressure. Mr. Thomas is now currently taking medication to maintain his Blood Pressure.

2. Many of the facts presented to and from the Magistrate Judge are nothing more than allegations being evaluated and no documented facts.

3. *In rebuttal to the facts being presented and things that has not been considered by the Magistrate Judge.*

   *In regard to the time of Mr. Thomas employment with the VA, the defendant has based Mr. Thomas termination on failure to qualify during his probationary period.* The defendant has fail to show any regulations disputing Mr. Thomas start of employment beginning the date of his travel, information about travel can be found in the VA Quick Reference Guide to Change of Station (PCS) @           on page 14 & 15. **(EXHIBIT (A - 1 of 31 Pages), EXHIBIT (B - 1 of 5 pages)** Fax copy of job duties from personnel prior to my arrival in Montgomery.
   The travel distance from Montgomery was 1900 plus miles that give me 7 days travel time with the government allowing 300 miles a day.
   For the safety of Mr. Thomas and his family member traveling, Mr. Thomas was not provided the 300 miles a day travel information, I consider that an error of personnel.

   Started traveling 0700 am 15 May 2003, and the end of employment was 14 May 2004. Under the tightest conditions Mr. Thomas exceeded the probationary period by one day, 2004 was a leap year giving February 2004 29 days causing the probationary period to be exceed in accordance with the regulation below. The delivery of documentation for the reason of Mr. Thomas separation was provided until 3 after his

separation that is now 4 days pass his probationary period. This is a clear violation of the **Office Of Personnel Management under 315.804**. (a) & (b)

**Office of Personnel Management:**
Clearly spell out what is the probationary period of a career conditional appointed employee. If the defendants fail to meet the provision of the Office Of Personnel Management under 315.804.

**315.804 Termination of probationers for unsatisfactory performance or conduct.**
(a) When an agency decides to terminate an employee serving a probationary or trail period because his work performance or conduct during this period fail to demonstrate his fitness or his qualifications for continued employment. It shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency conclusions as to the inadequacies of his performance or conduct.
(b) Probation ends when the employee completes his or her schedule tour of duty on the day on the day before the anniversary date of the employee's appointment. For example when the last work day is Friday and the anniversary date is Monday, the probationer must be separated before the end of the tour of duty on Friday since Friday would be the last day the employee actually has to demonstrate fitness for further employment.
Employees who are separated during their initial probationary period receive limited appeal rights under subpart H of these proposed regulations; **however, a preference eligible who has completed 1 year of creditable service has full appeal rights as provided by subparts G and H of these proposed regulations.**

The plaintiff asserts that each and every claim upon which the defendants base it case is due to be dismissed, as the defendants did not give Mr. Thomas due process, the defendants has fell to acknowledge the fact that Mr. Thomas is not a probationary employee. The termination documentation was present on the date of termination with no causes. Mr. Greer did not show any cause or claims until three working days after Mr. Thomas was terminated. Defendant has fail to product one document of counsel over the last six months of employment to support any of their claims.

*Mr. Thomas has clearly provided information to the court that shows he was not on probation. Mr. Thomas was not provided due process; all other allegation would be void if the probationary period was not in question.*

**Falsified or Altered Documents:**
For most of the claims I have made the defendant has tried to build a defense for or draw the attention of the court away form the facts with more lies.
Most of the emails being provided by the defendant has been altered or modified; I was waiting on the correct time to bring this information forward. I have not taken the time to visit all the emails provided by the defense. I have made a few available to the court for review.

**Exhibit (C)** These 4 document was forwarded and altered, when forwarding an email I can separate words, mis-align or even remove words as they have done in this document. The little arrows to the side prove that for a fact.

**Exhibit (D) Why** did management remove the messages form Mr. Thomas on this doc, all of my emails should have been in the original format. If management wanted to use them for evident. Mr. Thomas email massages have been tampered with as stated in prior documents presented to the court, all of my email was removed from my computer for several months and altered and then returned.

**Exhibit (E)** The defendant is misleading the court with the arrangement of the emails, please pay close attention to the email dates; it was very clear what scanners were to be removed and who authorize the scanners to be relocated. Mr. Greer or the US attorney has arranged the emails to confuse my message. On this exhibit read page 2 then page 1.

*Rebuttal to page 5 (Doc No 31.p.4)*
Mr. Carlisle and Mrs. Venne was very much aware that my permissions was not set in compliance with my job duties upon my initial employment. The software group is responsible for assigning administrative rights and permissions to new employees. Mr. Carlisle allowed Mrs. Venne to setup or should I say, "sabotage" my profile from day one, and other management such as Mr. Beasley and Mr. Greer was aware.
Mr. Thomas first encounter problems with his permission during the installation of Vista Imaging when the national implementation manager ask Mr. Thomas to perform a task and I did not have permission, I ask management along with The national implementation manager ask that I be given the appropriate permission to perform my duties. The system was being installed so there was no reason to restrict Mr. Thomas permissions.

**FACT: Discrimination Begin**
Mrs. Venne did not make an error setting up my permissions because my permissions should be the mirror of her own, I was consider to be her backup by job description. The allegation about Mr. Thomas rebooting the system and losing patient information was not to be considered at this time because the Vista Imaging system had just been installed. When the allegation was made about Mr. Thomas rebooting the system, Mr. Carlisle was told by the network admin Steve that he rebooted the system and Mr. Carlisle decided that he was going to restrict Mr. Thomas permissions for no reason. I question Mr. Carlisle actions and he stated he wanted me to focus on implementation and let Mr. Venne work on the system.
I felt he still didn't have a reason to restrict my permissions and I talk with other managers about Mr. Carlisle actions and I was told not to worry about it these things would come to pass and being a new employee I didn't want to make any waves, this is the guy that hired me and I felt he could just as easily firer me if I make problems.

*Why was I the only Implementation manger given a supervisor other than the CIO in my job description, all other Implementation Manager were White with no supervisor?*

**FACT: Page 6**
Management had never developed a job description for the implementation manager, after writing me a "BAD" 6-month evaluation; Mr. Thomas question what standard are you evaluating me to or who are you evaluating me to, considering this is a new position and I was following instructions from the VISN 7 leaders in performing my duties.

Considering email it not consider an official document, management has not produce one official document that that had poor grammar. Mr. Thomas verbal communication skills has never be question until my termination, having instructed the medical staff in Montgomery, Tuskegee, Columbus and Dothan their were no complaints from any of the service lines about grammatical or verbal communication.

Mr. Thomas was found to have Kazaa on his laptop computer, and that was the strangest thing, considering my computer was not on the network when they found Kazaa. My person work area and space was violated. Two other system admin was found with Kazaa on their laptop doing that sweep, nothing was done to them, they were **"white"**, but I was written up (maybe because I was **"BLACK"**) and they didn't want me in the position to start with.

**Page 7 & 8: Judith St Onge:**
The information provided by Mrs. St Onge and Mr. Greer was not true and fabricated by Mrs. Onge and Mr. Greer that is why this information was not available at the time of my termination. Mrs. Greer provided Mrs. St Onge statement after my termination. The conversation about nurses writing consults was not order by Mr. Thomas, a meeting was held with the Chief of Specialty, Clinical Informatics and Optometry, which falls under the specialty. I was training a nurse in Optometry and realize she was putting in her own consult. Mr. Thomas inform the nurse that he would be speaking with the service lines to get clarification on consults, because in order for insurances to pay for claims consults must be placed by a doctor. This was the result of the meeting with the Chief's Specialties. Mr. Thomas call and requested a meeting for the following Monday. The meeting was held with Mrs. McLean the Administrative Officer for Ambulatory Care and Mr. Holt Chief, the meeting was in session when Mrs. St Onge entered the room and started making false claims as if she was invited to the meeting. Mrs. Kate McLean contested Mrs. Mrs. St Onge statement in her EEOC testimony about what was really said in the meeting held about consults. Mrs. McLean the Administrative Officer for Ambulatory Care and Mr. Holt Chief of Nursing was being made aware of the meeting conducted by Mr. Thomas and Specialty Services. Mrs. St Onge jumps into the conversation and tried to twist the conversation into an argument, I clearly explain to Mrs. St Onge the finding and the results of the meeting held by all of the Chiefs of Specialties. Mr. Thomas ask that she speak with Mr. Beasley if Mrs. St Onge need further clarification about the meeting and Mr. Beasley provided the same information to Mrs. St Onge that was given by Mr. Thomas; there was never an argument with Mr. Thomas.
Mr. Thomas ask for this meeting to clarify the instructions from the service line prior to writing the requirement and proceed for consults to be followed by CAVHCS.
Mrs. St Onge had nothing to do with the scanning process, this all came about because a lot of outside providers had not be paid for Optometry services, VISTA Imaging made it possible for the doctors to scanning information into the electronic medical

record. The scanning process was setup by Mrs. Donna of specialties and Mr. Thomas of informatics to assist in paying long over due bills to providers. Over a million dollars in bills had not been paid. As you may imagine, that place some heat on some department heads including St Onge, this was one of the area she was responsible for.

**FACT: page 9**
The hardware manager Mr. Kuehndorf and Mr. Thomas have only had general conversation. Mr. Kuehndorf and Mr. Thomas have never had to work together on any occasion. Mr. Greer to this day do not know the responsible of the implementation manager, Mr. Thomas worked with all of the service lines directly. Mr. Thomas job responsible was to the customer in the area of training, requirements, process, and leading new development in a smooth seemly transition. This is what Mr. Greer and Mr. Carlisle made up together for a job description, they email people all around the VISN asking what they do, to come up with this mess. The proper job description for the job that Mr. Thomas was hired to do can be found in **Exhibit G. (Exhibit F:** Mr. Greer made-up Job Description) **(Exhibit G:** Duties of an Implementation**).**

Mr. Piper and Mr. Thomas did not get along and everything that Mr. Greer and Mr. Piper have put together is nothing but lies. Mr. Piper and his staff did not have the skill set to work with the computerize camera system and Mr. Thomas was ask by the Chief of staff to get their cameras on the network because it had cause a great back log. If all of the things Mr. Greer say were true, Mr. Thomas would have been written up for them and it would have been a termination letter long before May 2004 or their would have been some type of counseling in Mr. Thomas record to poor customer service. Mr. Greer and Mr. Carlisle drop the ball on this one and now has resulted to lies. The group of managers have lied under oath; the lies that they are telling, don't make any sense. There is no written record of any thing about his performance over the last six months. There are member on Mr. Piper staff that will testify that Mr. Greer and Mr. Piper is not being truthful if placed under oath.

Mr. Thomas has demonstrated his ability to work in a team environment and provide quality service to the government in a contractor position, in this role Mr. Thomas employment can terminated for any reason at any time. Mr. Thomas have ask that the hospital staff who was the customer be allowed to bring the truth forward to the court in a jury trail and let the truth be heard. The U.S. attorney is trying to hide the truth behind case, but the facts are here in black and white.

If the court should allowed the case to go to trail so that the truth may be told. The defendant would loose this case hands down. Mr. Greer had nothing but time on his hand seeking people that would lie for him. If you notice, none of medical staff doctors and nurses supports Mr. Greer in his allegations. The only support Mr. Greer have is his friends, people that he have personal relationship with or had something to gain.

The doctors and nurses that use the Topcon Cameras in questions will gladly tell you that Mr. Greer, Mr. Piper and Mrs. Sumner is not being truthful in the statements being made about Mr. Thomas messing up the cameras. Mr. Thomas was the only person on sight that had any ideal what was going on with the Topcon Cameras.

The information provided above and below is reason enough for trail.

## Employment

1. Employment Time: More than one year
2. Start Date:15 May 2003
3. End Date: 14, May 2004
4. What is PCS Travel? You must be an employee to get PCS orders.
5. When did the probationary begin?
6. How many days travel is allowed by government?  7 days Travel
7. Was Mr. Thomas given due process? "NO"
8. How my times was Mr. Thomas written up for his performance. "NONE"

**Based on these finding and the regulation above, the termination was wrong and Mr. Thomas definitely deserves to go to trail and have a jury decide this. It's seemed the defense is hiding behind a lot of case from the law library, but the truth will stand with the people and the facts will stand.**

## Professional Performance Sheets

1. Training manual use at CAVHCS: 1 manual was produce and Mr. Thomas did it along, Mr. Beasley had nothing to do with the manual.
2. Written testimony of medical staff and their opinion on the training received on the training information form provided; of course Mr. Greer has destroyed all records. **EXHIBIT (H)** Example of the form: Each and every training class was document and graded, 70 % good 29% excellent and 1 person gave Mr. Thomas a fair.

## Evaluation Periods

1. Who wrote Mr. Thomas first 6-month evaluation?
   Understanding that Vista Imaging was installed around the 25 August 2003, they wrote this first 6-month evaluation based on less than two months of everyone working around the application. When in fact they had nothing to evaluate Mr. Thomas with, Mr. Carlisle and Mr. Greer did not provide a job description until after the first evaluation.

2. Mr. Greer did not officially become my supervisor until the after Mr. Thomas first evaluation; he was sitting in asking questions on my evaluation as if he was my supervisor.

3. According to the need improvement placed in Mr. Thomas first six-month evaluation, what was the improvement based on?  We had not started working with any customers yet because the system was not ready (Mrs. Venne). What type of counseling or documents for improvement did management provide for Mr. Thomas? They ask that Mr. Thomas take this writing course and Mr. Thomas took the course and did passing the course. Mr. Thomas started a second course that was incomplete

at the requested time management ask that the course be turned end. Management had an obligation to assist Mr. Thomas in many ways if they felt Mr. Thomas was not meeting their requirement written or verbally. I would like to go on record, my verbal communication skills are not to be question by anyone at CAVHCS
Mr. Greer looked for any thing to place in my termination document because he had nothing.
**EXHIBIT (I) 1-7 pages)** These are support options that management had at their disposal, but choose none.

4. According to the first 6 months evaluation requirements, where are the month to month progress reports that Mr. Greer and Mr. Beasley completed to assist Mr. Thomas improvement his job skills? **Management did not do anything**

5. Were their any negative write-ups on Mr. Thomas during his last six months of employment? **If no, why was he terminated?**

## Case study Law

**EXHIBIT (J)**

Quinn Boulry vs Jackqueline Young-Saborin

George I. Burrows vs Licking County Humane

NY County Judge denies summary judgment in discrimination case

*Larry D. Thomas 6/6/07*
*3327 Lunceford St*
*Montgomery, AL 36108*
*334-239-7692*

# Declaration of service

Executed on June 6, 2007

Respectfully submitted,

*Larry D. Thomas 6/6/07*
Larry D Thomas / Plaintiff/ /pro se
3327 Lunceford St
Montgomery, Alabama 36108


**ATTN: Magistrate Judge Charles Coody**
OFFICE OF THE CLERK
United States District Court
P.O Box 771
Montgomery, Alabama 35101-0711


**Randolph Neeley**
Assistant United States Attorney
United States Attorney's Office
P.O. Box 197
Montgomery, Al 36101-0197