# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

**Larry D. Thomas**
**Plaintiff/pro se**                                    **Civil Action No 2:05cv437-T**

**Vs**

**R James Nicholson**
**Secretary, Department of**
**Veterans Affairs**


# EXHIBIT J

**Case Study Law**

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

QUINN BOULEY, on her own behalf   :
and as guardian ad litem for   :
her minor children, SAGE   :
HARPLE and EROS BOULEY-SWEDO   :   Civil No. 1:03CV320
   :
   v.   :
   :
JACQUELINE YOUNG-SABOURIN   :
_____:

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT
### (Papers 46 and 61)

The plaintiff in this civil rights action claims the
defendant evicted her from an apartment in violation of the Fair
Housing Act of 1968, 42 U.S.C. §§ 3601 et seq. Relying on
deposition testimony and other portions of the undisputed record,
both parties have moved for summary judgment. Because the Court
finds the record contains material factual disputes, and for the
reasons set forth below, the Defendant's Motion for Summary
Judgment and Plaintiff's Cross Motion for Summary Judgment are
DENIED.

### Background

On a motion for summary judgment, the moving party has the
initial burden of informing the Court of the basis for the motion
and identifying the absence of a genuine issue of material fact.
See, e.g., Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d
Cir. 1994). Where, as here, cross motions for summary judgment
are supported by affidavits and other documentary evidence, each

1

party, in opposing the other's motion, must set forth specific
facts showing there is a genuine, material issue for trial.  See
Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir.
1994).  Only disputes over facts which might affect the outcome
of the suit under the governing law preclude the entry of summary
judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

     Upon review of the documentation in the record, and solely
for the purpose of deciding the pending motions, the Court sets
forth the following.  On August 1, 2003, plaintiff Quinn Bouley,
her husband, Daniel Swedo, and their two children, rented the
apartment upstairs from defendant Jacqueline Young-Sabourin. See
Def.'s Statement of Undisputed Facts (Paper 47) at Ex. A.  The
apartment is located at 63-65 Fairfield Street, St. Albans,
Vermont.  From August 1, 2003 through October 15, 2003, the
plaintiff received no complaints from the defendant related to
her tenancy and, in fact, had very little personal contact with
the defendant.

     On October 15, 2003, at approximately 8:00 p.m., the
plaintiff's husband, Daniel Swedo, criminally attacked her.  The
plaintiff called the police and fled the apartment.  St. Albans
police arrested her husband and, that night, the plaintiff
applied for a restraining order.  See Pl.'s Statement of
Undisputed Facts (Paper 63) at paras. 15-19.  Swedo eventually

2

pled guilty to several criminal charges related to the incident, including assault.

On the morning of October 18, 2003, the defendant visited the plaintiff's apartment. The plaintiff and defendant dispute the particulars of their conversation; the plaintiff has characterized the discussion as one in which the defendant attempted unsuccessfully to discuss "religion" and "Christianity" with her before declaring "I guess I can't do anything here" and leaving. See Paper 63 at 44. Later that day, the defendant wrote the following letter, in which she asked the plaintiff to leave the premises by November 30, 2003:

Dear Quinn,

The purpose of my visit this morning was to try and work things out between you, your agreement in your lease, and the other tenants in the building. I felt very disappointed in the fact that you started to holler and scream, and threaten me, in my efforts to help you. This could only lead me to believe that the violence that has been happening in your unit would continue and that I must give you a 30 day notice to leave the premises.

Agreement #10 on your lease states that "Tenant will not use or allow said premises or any part thereof to be used for unlawful purposes, in any noisy, boisterous or any other manner offensive to any other occupant of the building." Other tenants, and now myself included, feel fearful of the violent behaviors expressed.

Other issues of the lease have not been kept. I see this as minor and again was in hopes to [sic] work them out with you. #7 No storage shall be kept outside the building or on porches and, in the body of the lease itself, "Tenant shall pay Jacqueline L. Young-

Sabourin or her authorized agents John and Windee Young
or Katherine Duggan on the 1st day of the month."

Although I did not see the holes in the wall,
several sources have told me that holes have been
punched in the walls in the unit.  In addition, I gave
you permission to repaper the wall in the living room
or paint it as you did not like the paper.  At this
time half of the layers of old paper have been peeled
off and the walls are left in bad condition.

I would like to remind you that you signed an
Apartment inspection sheet at the time of your rental,
and I expect the apartment to be in the same condition
when you move out.  Daniel has stated that he will work
in the apartment after you have moved.

Your 30 day notice will mean that you should leave
the premises by November 30, 2003.  As stated in your
lease, your last months [sic] rent is not covered by
your deposit. Cooperation between myself and my tenants
would be appreciated up to that time, and repair to the
apartment.

Paper 47 at Ex. B.

<u>Discussion</u>

The Fair Housing Act makes it unlawful, <u>inter</u> <u>alia</u>, "[t]o

refuse to sell or rent after the making of a bona fide offer, or

to otherwise refuse to negotiate for the sale or rental of, or

otherwise make unavailable or deny, a dwelling to any person

because of race, color, religion, sex, familial status, or

national origin."  42 U.S.C. § 3604 (a).  The plaintiff alleges

the defendant unlawfully terminated her lease on the basis of sex

and religion.  First, she claims the termination was initiated

because she was a victim of domestic violence, and second,

because she refused to listen to the defendant's attempt to

4

discuss religion with her after the incident.  These claims, if
proven, could constitute unlawful discrimination under the Fair
Housing Act.  Cf. Smith v. City of Elyria, 857 F. Supp. 1203,
1212 (N.D. Ohio 1994)(In a civil rights suit commenced against
police department, the court states: "There is evidence in the
record from which a jury could find the defendants' domestic
disputes policy had a discriminatory impact and was motivated by
intent to discriminate against women.").

Claims of housing discrimination are evaluated using the
McDonnell Douglas burden-shifting framework.  Mitchell v. Shane,
350 F.3d 39, 47 (2d Cir. 2003).  "Accordingly, once a plaintiff
has established a prima facie case of discrimination, the burden
shifts to the defendant to assert a legitimate, nondiscriminatory
rationale for the challenged decision. . . . If the defendant
makes such a showing, the burden shifts back to the plaintiff to
demonstrate that discrimination was the real reason for the
defendant's action. . . . Summary judgment is appropriate [only]
if no reasonable jury could find that the defendant's actions
were motivated by discrimination."  Id. (citations omitted).

The plaintiff has demonstrated a prima facie case.  It is
undisputed that, less than 72 hours after the plaintiff's husband
assaulted her, the defendant attempted to evict her.  In
addition, the record contains evidence which suggests the
eviction also may have been prompted by the plaintiff's refusal

5

to discuss religion with the defendant.  See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)("As this was the first mention of a termination date, the timing of Snook's letter supports an inference of discrimination sufficient to establish a prima facie case.").

In response, the defendant has presented little evidence of preexisting problems with the plaintiff, as a tenant.  In addition, the timing of the eviction, as well as reasonable inferences which a jury could draw from some of the statements in the eviction letter, could lead a reasonable jury to conclude that the real reason for the defendant's actions was unlawful discrimination.  See, e.g., Schnabel v. Abramson, 232 F.3d 83, 89 (2d Cir. 2000)("the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose").

The Cross Motions for Summary Judgment are DENIED.  The Clerk is instructed to place this case on the next jury trial calendar.

SO ORDERED.

Dated at Brattleboro, Vermont, this 10th day of March, 2005.


                              /s/ J. Garvan Murtha
                              J. Garvan Murtha
                              United States District Judge


6

[Cite as *Burrows v. Licking Cty. Humane Soc.*, 2006-Ohio-4057.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

GEORGE I. BURROWS

    Plaintiff-Appellant

-vs-

LICKING COUNTY HUMANE
SOCIETY, ET AL.

    Defendants-Appellees

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. John F. Boggins, J.

Case No. 05CA113

O P I N I O N

CHARACTER OF PROCEEDING:

Appeal from the Court of Common Pleas,
Case No. 2004CV01122

JUDGMENT:

Affirmed

DATE OF JUDGMENT ENTRY:

August 8, 2006

APPEARANCES:

For Plaintiff-Appellant

S. CRAIG PREDIERI
341 Granview Road
Granville, OH 43023

For Defendants-Appellees

RUFUS B. HURST
400 South Fifth Street
Suite 200
Columbus, OH 43215

Licking County, Case No. 05CA113                                                    2

*Farmer, J.*

{¶1}   On September 16, 2003, appellant, George Burrows, became employed with appellee, the Licking County Humane Society.   In April of 2004, appellant was terminated for allegedly being intoxicated while at work.   At the time of his firing, appellant was over age sixty.

{¶2}   On September 20, 2004, appellant filed a complaint against appellee, together with Homeward Bound Humane Society, Board President Penny Gregorich and Board Member Robert Wirick.   The latter two were sued in their official and personal capacities.   Appellant claimed in pertinent part age discrimination, disability discrimination and wrongful discharge in violation of public policy.

{¶3}   On August 2, 2005, appellees filed a motion for summary judgment.   By judgment entry filed October 11, 2005, the trial court granted the motion in favor of appellees.

{¶4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}   "THE  TRIAL  COURT  ERRED  WHEN  IT  GRANTED  APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S AGE DISCRIMINATION CLAIM BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING THIS CLAIM."

II

{¶6}   "THE  TRIAL  COURT  ERRED  WHEN  IT  GRANTED  APPELLEES' MOTION   FOR   SUMMARY   JUDGMENT   ON   APPELLANT'S   WRONGFUL

TERMINATION IN VIOLATION OF PUBLIC POLICY BASED UPON AGE DISCRIMINATION BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING THIS CLAIM."

III

{¶7} "THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S DISABILITY DISCRIMINATION CLAIM BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING THIS CLAIM."

IV

{¶8} "THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY BASED UPON DISABILITY DISCRIMINATION BECAUSE GENUINE ISSUES OF MATERIAL FACT EXISTS CONCERNING THIS CLAIM."

V

{¶9} "THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE PERSONAL LIABILITY OF APPELLEE GREGORICH AND APPELLEE WIRICK BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING THIS CLAIM."

{¶10} Appellant claims the trial court erred in granting summary judgment to appellees. Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

Licking County, Case No. 05CA113                                                    4

{¶11} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶12} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

I, II

{¶13} Appellant's first two assignments of error challenge the trial court's determination that appellant's claims of age discrimination under R.C. 4112.02 and wrongful termination in violation of public policy based on age discrimination were without merit. We disagree.

{¶14} R.C. 4112.02 governs unlawful discriminatory practices and states in pertinent part:

{¶15} "It shall be an unlawful discriminatory practice:

{¶16} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to

refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶17} In order to establish a prima facie case of age discrimination in an employment discharge action, "a plaintiff-employee must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class." *Kohmescher v. Kroger Company* (1991), 61 Ohio St.3d 501, syllabus.

{¶18} Defendant-employer may then overcome the presumption by advancing a legitimate, nondiscriminatory reason for the discharge. *Potts v. Catholic Diocese of Youngstown,* 159 Ohio App.3d 315, 2004-Ohio-6816. Finally, plaintiff-employee must be allowed to show the reason was merely a pretext for unlawful discrimination. Id.

{¶19} Appellant claimed he was over the age of sixty when he was terminated, and he was replaced with a younger worker. In granting appellees' motion for summary judgment on these claims, the trial court based its decision on *Krupar v. Centria Partnership* (August 31, 1999), Guernsey App. No. 98-CA-18, wherein this court found an age discrimination claim could not rest alone on the fact that a younger person was hired to replace the claimant. The trial court further determined the non-discriminatory reason for termination advanced by appellees overcame the presumption of age discrimination. *Potts,* supra.

{¶20} We concur with the trial court's analysis on both issues for the following reasons. Appellant was hired when he was over the age of sixty, within the statutory

protected class. Burrows depo. at 6, 9. Appellees' decision to terminate appellant was undisputed. Appellees stated the reason was due to appellant's intoxication while at work and the possible threat to others. Although appellant disputes this reason, he never cooperated with the investigation of the charge. Burrow depo. at 28; Gregorich depo. at 22. A witness, Jean Ross, specifically stated appellant was intoxicated while at work. Gregorich depo. at 17. This statement, coupled with appellant's uncooperative behavior, led appellee Board to terminate appellant. Gregorich depo. at 24-25. Appellant testified he believed he was terminated because appellee Board accepted appellee Gregorich's opinion that he was intoxicated. Burrows depo at 44-45.

{¶21} We therefore conclude even if appellee Board was in error in believing appellee Gregorich's opinion, it made its decision on the issue of intoxication and not on the basis of age.

{¶22} Assignment of Errors I and II are denied.

III, IV

{¶23} Appellant challenges the trial court's determination that appellant's claims of disability discrimination under R.C. 4112.02 and wrongful termination in violation of public policy based on disability discrimination were without merit. We disagree.

{¶24} In order to establish a prima facie case of disability discrimination in an employment discharge action, "the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential

Licking County, Case No. 05CA113                                           7

functions of the job in question." *Hood v. Diamond Products,* 74 Ohio St.3d 298, 1996-Ohio-259, syllabus.

{¶25} Appellant based his disability claim on the fact that he was a recovering alcoholic. We find the trial court's analysis on these claims is correct for the following reasons.

{¶26} The only facts appellant can point to to indicate appellees may have had knowledge of appellant's disability is that he had told some employees in confidence he was a recovering alcoholic, and Ms. Ross had referred to him as an "old drunk." Burrows depo. at 33, 35. Otherwise, appellant kept the information to himself and considered it a private matter. Burrows depo. at 34-35.

{¶27} As the Sixth Circuit Court of Appeals has pointed out in *Martin v. Barnesville Exempted Village School District Board of Education* (C.A.6, 2000), 209 F.3d 931, 934, "there is a distinction between taking an adverse job action for unacceptable misconduct and taking such action solely because of a disability, even if the misconduct is 'caused' by the disability." The Americans with Disabilities Act protects recovering alcoholics, but "does not protect plaintiff from his own bad judgment in drinking on the job." Id. at 935.

{¶28} No one disputes the fact that appellant was terminated because appellee Gregorich opined appellant had been drinking on the job. Wirick depo. at 20-21. Appellee Wirick testified he did not know appellant was a recovering alcoholic. Id. at 11. Although appellee Wirick could not make the judgment that appellant was intoxicated as it did not appear appellant had been drinking "at the moment that I saw him, he did not voice any objection to appellant's termination during the Board meeting. Wirick depo. at

Licking County, Case No. 05CA113                                               9

{¶35}  The judgment of the Court of Common Pleas of Licking County, Ohio is

hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Boggins, J. concur.


_____


_____


_____


                                                   JUDGES

SGF/sg 0719

13; Gregorich depo. at 26. Appellee Gregorich also testified she did not know appellant

was a recovering alcoholic. Gregorich depo. at 28. She testified Ms. Ross complained

to her that appellant appeared to be alcohol impaired. Id. at 17. Appellee Gregorich

observed appellant, who appeared to be avoiding her, for one and one-half hours and

concluded appellant was intoxicated and smelled of alcohol. Id. at 18-20, 27.

{¶29} We find even if appellee Gregorich was incorrect in her assessment of

appellant's condition, it was still accepted as true by the other Board members.

Therefore, the decision to terminate appellant was not based upon his disability, but

upon the belief of a witness that appellant was intoxicated while on the job.

{¶30} We conclude the trial court's analysis was correct because appellees did

not have any knowledge of appellant's disability and his termination was based upon his

own actions on the job.

{¶31} Assignment of Error III and IV are denied.

V

{¶32} Appellant claims the trial court erred in dismissing his claims against

appellees Gregorich and Wirick. We disagree.

{¶33} Based upon our own decisions in Assignments of Error I through IV, we

find personal liability cannot be attributable to appellees' employees and Board

members.

{¶34} Assignment of Error V is denied.

Licking County, Case No. 05CA113                                                      10

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

GEORGE I. BURROWS                          :
                                           :
        Plaintiff-Appellant                :
                                           :
-vs-                                       :          JUDGMENT ENTRY
                                           :
LICKING COUNTY HUMANE                      :
SOCIETY, ET AL.                            :
                                           :
        Defendants-Appellees               :          CASE NO. 05CA113


        For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.


                              _____


                              _____


                              _____

                                        JUDGES

## NY County judge denies summary judgment in discrimination case

by

The plaintiff, an Israeli Jew, alleged that she was subjected to a hostile work environment, was discriminated against and was fired for her retaliation. The defendants moved for summary judgment.

Reviewing the facts in Carmit Kaspi v. Fairway Operating Corp., et al., New York State Supreme Court, New York County Judge Marylin G. Diamond concluded that the plaintiff established the existence of a material issue of fact. Summary judgment was denied.

The Facts

The plaintiff, Carmit Kaspi, was employed by the defendants, owners of three Fairway food markets. Kaspi was hired to manage Fairway's graphics department from Jan. 14, 2002 to Dec. 2, 2002, at which time she was terminated.

Kaspi is a Jewish woman and an Israeli citizen. She alleged that during the first months of her employment she was subjected to a barrage of angry, offensive words referring to the fact that she is an Israeli Jew. She claimed that she was subjected to discriminatory remarks from several employees, including Robert Rodriguez and Shakeena Marble.

Kaspi conceded that the overt references to her religion and nationality ended in June or July 2002 but the harassment continued in the form of conduct by others in the company, such as not being given sign request forms that had been faxed to her, not transmitting to the corporate office the purchase orders and inventory sheets she had prepared and having her keys to the bathroom taken away.

### Advertisement

John Rossi, Fairway's store manager and Kaspi's supervisor, testified that she mentioned that she had been subjected to anti- Israeli or anti-Jewish remarks.

Kaspi testified that Rossi refused to take any corrective action and was hostile about her complaints.

Kaspi alleged discrimination and that she was subjected to a hostile work environment based on her religion and nationality, which affected the condition of her employment. She also brought a cause of

action under Section 8-107(7) of the New York City Civil Rights Law, alleging that Fairway retaliated against her by terminating her employment after she spoke to Fairway's managers and owners.

Fairway claimed that the conduct was not prompted by her nationality or religion but, inter alia, because of Kaspi's treatment of other employees.

Fairway moved for summary judgment dismissing the complaint in its entirety.

Court's Analysis

The City Human Rights Law makes it unlawful for an employer to discriminate because of a person's religion or nationality, New York City Admin. Code Section 8-107(1)(a). Harassment is a form of discrimination in which a person is subjected to a hostile work environment based on religion or nationality.

The same standards are applied to the City Human Rights Law as are applied under federal anti-discrimination laws, Walsh v. Covenant House, 244 AD2d 214, 215 (First Dept. 1997).

A hostile work environment exists [w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment, Harris v. Forklift Sys., 510 US 17, 21 (1993); Meritor Sav. Bank v. Vinson. 477 US 57 (1986).

To make out a prima facie case of harassment based on nationality or religion, the plaintiff must prove (1) the conduct or words upon which the harassment claim is predicated were prompted simply because of [the plaintiff's] nationality or religion; (2) the conduct or words created a hostile work environment in which the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] work environment; and (3) there is a specific basis for imputing the conduct that created the hostile environment to the employer, Petrosino v. Bell Atlantic. 385 F3d 210, 220 (Second Circuit 2004); Meritor at 66-69; Trotta v. Mobil Oil Corp., 799 FSupp 1336 (SDNY 1992).

The court considered the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was a humiliating comment or a mere offensive utterance and whether it unreasonably interfered with the plaintiff's work performance, Harris at 21.

*Larry Thomas 6/6/07*

Fairway argued that the harassing words and conduct were not sufficiently severe to support Kaspi's claim of a hostile work environment.

Judge Diamond stated [i]n addition to a constant stream of abuse from Rodriguez and Marble over the first few months of her employment, [she alleged] that at least three other employees at Fairway insulted her during the first six months by making crude and profane references to her being an Israeli Jew.

According to the judge, whether Kaspi actually experienced these insults or was fabricating them were issues to be resolved at trial.

Imputed Liability

City Human Rights Law provides an employer shall be liable for such a discriminatory practice by an employee where either (1) the employee exercised managerial or supervisory responsibility, (2) the employer, either itself or through an employee who exercised supervisory or managerial responsibility, knew of the employee's discriminatory conduct and acquiesced in the conduct or failed to take immediate and appropriate corrective action or (3) the employer should have known of the employee's discriminatory conduct and failed to exercise reasonable diligence to prevent it, NYC Admin. Code Section 8-107(13)(b).

*Larry Thomas 6/6/07*